AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

## DISTRICT OF DELAWARE

**In the Matter of the Search of**

(Name, address or brief description of person, property or premises to be searched)

**ASUS laptop computer,
serial number 2ANPO23986, and
an "A-DATA JOGR" portable
digital storage device**

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

Case Number 08- 9|M

I, ___William Shields_____, being duly sworn depose and say: I am a(n)
___Special Agent, Dept of Homeland Security_____ and have reason to believe that

_____ on the person of or _X_ on the property or premises known as (name, description and/or location)

*ASUS laptop computer, serial number 2ANPO23986, and an "A-DATA JOGR" portable digital storage device*

in the _____ District of _____Delaware_____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

*See Attachment A, which is incorporated herein by reference,*

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rule of Criminal Procedure)

*property that constitutes evidence of the commission of a criminal offense, the fruits of crime and things criminally possessed and property designed and intended for use and which has been used as a means of committing a criminal offense, to wit, violations of 18 U.S.C. 2250 (failure to register a sex offender) and 18 U.S.C. 2423(c) (traveling in foreign commerce to engage in illicit sexual acts with minors)*

**The facts to support a finding of Probable Cause are as follows:**

*See attached affidavit of William Shields, which is incorporated herein by reference.*

**Continued on the attached sheets and made a part hereof.** _X_ Yes _____ No

_Signature of Affiant_
Special Agent William Shields, Dept of Homeland Security

Sworn to before me, and subscribed in my presence
____5/9/08_____ at _____Wilmington, Delaware_____
Date                                                                City and State

United States Magistrate Judge
District of Delaware
Name and Title of Judicial Officer                    Signature of Judicial Officer

A F F I D A V I T

I, William Shields, being duly sworn, do hereby depose and state the following:

I. INTRODUCTION

1. I am a Special Agent with the United States Immigration and Customs Enforcement ("ICE"). I am a federal law enforcement officer authorized by the Secretary of Homeland Security to request the issuance of search warrants. During the investigation of cases, I have participated in the execution of search and arrest warrants, and seized evidence of violations of United States law. I have been employed as a Special Agent for ICE (and its predecessor, the United States Customs Service) for twenty-four years, and am currently assigned to the Wilmington, Delaware, Office of Investigations. I was previously assigned to the Philadelphia Office of Investigations for approximately twenty-one years, where my responsibilities included conducting investigations into financial crimes, commercial fraud, child pornography smuggling, asset removal, and narcotics smuggling. I have received training in the area of child pornography and child exploitation. I have received training from ICE and its predecessors (the United States Customs Service (USCS)), regarding the sexual abuse of children, the behavior of preferential child molesters, and how to conduct investigations of child sexual exploitation.

II. PURPOSE FOR THE AFFIDAVIT

2. This affidavit is made in support of a search warrant for an ASUS laptop computer, serial number 2ANPO23986, and an "A-DATA JOGR" portable

1

digital storage device ("thumb" drive), hereinafter "media items," seized incident to the arrest of Thomas Pendleton on March 10, 2008. The items are currently stored in evidence by the United States Marshall's Service at their office in Wilmington, Delaware.   As discussed below, the "media items" were possessed by THOMAS PENDLETON at the time of his arrest.   As set forth herein, there is probable cause to believe that THOMAS PENDLETON violated Title 18 United States Code, Section 2250(a), which makes it a crime to fail to register as a sex offender with the state in which an individual resides for more than 3 business days after a previous conviction for a qualifying felony sexual offense, and violated Title 18 United States Code, Sections 2423(c), which make it a crime for any person to travel in foreign commerce and engage in illicit sexual conduct with a person under 18 years of age. Your affiant submits there is probable cause to believe that evidence, fruits and instrumentalities of these crimes will be found in the "media items," including, but not limited to, digital records of travel, research on Delaware sex offender registry laws, photographic evidence of travel locations relevant to the charges, email correspondence, and an electronic "travel diary" maintained by THOMAS PENDLETON.

3. Because the purpose of this affidavit is to set forth only the facts necessary to establish probable cause for a search warrant for the "media items," I have not described all the facts and circumstances of which I am aware. Facts not set forth herein are not relied upon in support of my conclusion that probable cause exists. Where statements of others are set forth in this affidavit, they are set forth in substance and in part.

2

## **Statutory Authority**

4.  Title 18, United States Code, Section 2250, provides, in part, that it is unlawful for anyone who is required to register under the Sex Offender Registration and Notification Act, to travels in interstate or foreign commerce and knowingly fail to register or update a registration as required by the Sex Offender Registration and Notification Act.

5.  Title 18, United States Code, Section 2423(c) and (e) provides, in part, that it is unlawful for a United States citizen to travel in foreign commerce and engage in any illicit sexual conduct with another person, or attempt to do the same.

6.  Title 18, United States Code, Section 2423(f) defines, in part, "illicit sexual conduct" as a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act had occurred in the special maritime and territorial jurisdiction of the United States.

7.  Title 18 United States Code, Section 2246 defines a sexual act as:

(A) contact between the penis and the vulva or the penis and the anus, and for the purpose of this subparagraph contact involving the penis occurs upon penetration, however, slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

3

(D) **the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with the intent to abuse, harass, degrade, or arouse or gratify the sexual desire of any person.**

III. FACTS ESTABLISHING PROBABLE CAUSE

**PENDLETON'S RECENT ARREST FOR FAILURE TO REGISTER**

8.  On March 10, 2008, U.S. Marshals placed PENDLETON under arrest for failure to register as a sex offender.  During this arrest, Marshals asked PENDLETON his name, date of birth, and address.  PENDLETON stated that 202 W. 14th Street, Wilmington, DE was his address.  Marshals gave PENDLETON his Miranda warnings, and PENDLETON indicated that he wished to speak with an attorney.  PENDLETON signed a Miranda form, but then PENDLETON asked Marshals to explain the nature of the charges against him. The Marshals told PENDLETON that he was arrested for failure to register as a sex offender in violation of 18 U.S.C. 2250.  PENDLETON responded that he checked the Delaware website and saw that he was not required to register as a sex offender and he was aware the Delaware changed its law but that the change did not affect him.

9.  At the time of his arrest, PENDLETON had a new U.S. Passport on his person and told Marshals he planed to depart for an unspecified location in Europe on Wednesday or Thursday (March 12 or 13, 2008) of that week. PENDLETON also possessed a computer printout from Airfare.com noting his electronic reservation for travel to the Czech Republic for Wednesday, March 12,

4

2008. Further, PENDLETON possessed a printout from a Yahoo! Mail account from "WTC (AGENTID00291379)" to "TOMTOURSP@YAHOO.COM", with the subject "Pendleton/Thomas 12MAR JFK, and dated 29 Feb 2008. The body of the email contains an itinerary for travel for Thomas Pendleton from JFK Airport to Prague, Czech Republic on March 12, 2008.

10. PENDLETON also had in his possession an ASUS Computers laptop computer and a A-DATA JOGR "thumb drive," which Marshals seized incident to his arrest. Importantly, according to U.S. Marshall William David, when Marshalls were collecting his belonging, PENDLETON surreptitiously attempted to place the "thumb drive" into a folder despite being told to lay out all possessions in his pocket in front of Marshalls. As stated above, the computer and "thumb drive" are currently maintained by the U.S. Marshals in their evidence room at their office location at Wilmington, Delaware.

11. Your affiant believes that PENDLETON is a United States Citizen based on the fact that PENDLETON had in his possession a current United States Passport and has traveled using a U.S. Passport in the past.

### PENDLETON'S PRIOR CHILD SEX OFFENSE CONVICTIONS AND HISTORY OF SEX OFFENDER REGISTRATION

12. On or about December 11, 1990, in the State of New Jersey, PENDLETON was convicted of Aggravated Sexual Assault Against a Minor and was sentenced on September 10, 1993, to 7 years in prison. Pursuant to this conviction, PENDLETON was required, based on the requirements of the jurisdiction in which he resided, to register as a sex offender.

13. Following his discharge from New Jersey State Prison on March 15, 1998, PENDLETON subsequently had his sex offender registration and probation transferred from New Jersey to the District of Columbia, where he was supervised by the Washington, D.C. Court Services & Offender Supervision Agency (CSOSA). 19. At the end of October, 2001, PENDLETON's sister informed CSOSA that PENDLETON had left the United States for Latvia. On December 6, 2001, PENDLETON was arrested in the Republic of Latvia, for "committing lewd activities with persons under against their will," specifically the sexual molestation and assault of a 13 and 9 year old boy, and PENDLETON was convicted of this offense and sentenced to 5 years in prison, of which he served approximately 3 ½ years in prison. On May 23, 2004, the defendant's conviction was affirmed in the Supreme Court of the Republic of Latvia. PENDLETON was deported from Latvia on March 18, 2005, and arrived in New York City.

14. On March 28, 2005, PENDLETON contacted Yolanda Stokes of CSOSA. Ms. Stokes informed PENDLETON that he would be re-classified as a sex offender by virtue of his Latvia conviction, and informed PENDLETON that he has 72 hours to report any changes of address to CSOSA, and that he was required to report to CSOSA weekly while PENDLETON was traveling to Chicago.

15. On April 29, 2005, PENDLETON sent an email from his tomtoursp@yahoo.com email account to Yolanda Stokes of the CSOSA, in which he cited a United States Supreme Court case, *Small v. United States*, and

6

argued that "foreign court convictions are not automatically valid in the USA," so that "my classification [as a sex offender] should revert to the lower level that it had before, eliminating any reference to any foreign conviction." In this email, PENDLETON told CSOSA that he was moving his residence to        W. 14th Street, Wilmington De, 19801. PENDLETON further wrote in the email: "Effective May 1, 2005, I am moving my residence from the District of Columbia to the State of Delaware. I have already been in contact with the Delaware authority [sic], confirming my responsibilities there (Delaware State Police, State Police, State Bureau of Identification, Sex Offender Central Registry, PO Box 430, Dover, DE, 19903 (Tel: 302-739-5882)."

16.  In or about November, 2005, PENDLETON again left the United States and traveled to Paris, en route to Hamburg, Germany.

### PENDLETON'S GERMAN CHILD SEX OFFENSE CONVICTION

17.  PENDLETON was arrested in Kempten, Germany for the sexual abuse of a minor, and on October 16, 2006, PENDLETON was convicted and sentenced to 2 years and 6 months incarceration for this crime.

18.  Based on witness statements taken during the German trial, including the victim in the case, PENDLETON met a 15-year-old boy through a protestant minister in Kempten, Germany. The boy resided at a children's school at the time due to inappropriate care by his own parents. PENDLETON began a friendship with the boy that ultimately led to a bicycle trip through the Fussen area of Germany. On or about September 27, 2006, the boy and PENDLETON set up a tent in a camping lot in Hopfen am See and went on a long bicycle trip.

7

Later that evening, PENDLETON offered to massage the boy's back and leg. The boy consented to this touching. Following the massage of the boy's back, PENDLETON had the boy turn over and he began to massage his stomach. During this time, PENDLETON went into the boy's pants and touched his penis. The boy objected and PENDLETON stopped.

19. Following this exchange, the boy went to sleep in his sleeping bag wearing a t-shirt, shorts, and underwear. At some time that night while the boy was sleeping, PENDLETON pulled the boy's pants down and began masturbating the boy. The boy awakened during this event, became aware of the situation, jumped out of the tent, grabbed his bicycle, and rode off. The boy rode to a nearby house where he knocked on a window and while very upset, told the woman who answered the door that he had been asleep and PENDLETON touched him in a sexual manner.

20. Based on these articulated facts, your affiant believes there is probable cause to believe that Thomas Pendleton violated 18 U.S.C. 2423(c), enacted by the PROTECT Act on April 30, 2003, in that he traveled in foreign commerce after April 30, 2003 and engaged in illicit sexual contact with a minor under the age of 18, in this case a 15-year-old.

**Effect of German Conviction on PENDLETON'S sex offender registry status**

21. While imprisoned in Germany, PENDLETON had several contacts with U.S. embassy personnel in which he made specific inquiries about the effect of his German conviction on his status upon his return to the United States. PENDLETON asked the consular service whether he would be subject to a

8

"three strikes" provision when he returned to the United States. The Consular service advised PENDLETON to consult with the Attorney General for the state or states in which he planned to reside to determine the applicability of their state laws to his German conviction, including whether any "three-strikes" provision might apply.

22. Under the Adam Walsh Act and the Sex Offender Registration and Notification Act (SORNA), foreign sex offense convictions trigger federal registration requirements so long as the conviction was achieved in a process that guaranteed due process and fundamental fairness. U.S. Attorney General regulations promulgated pursuant to Section 1115(b) of SORNA provide that foreign convictions have been obtained with sufficient safeguards for fundamental fairness and due process if the U.S. State Department in its country reports on human rights practices has concluded that an independent judiciary generally enforced a right to a fair trial during the year of the conviction. The U.S. State Department's report on human rights practices for Germany stated that Germany did generally enforce a right to a fair trial in the year 2006, and therefore PENDLETON's 2006 conviction in Germany for sexual abuse of a minor qualified him as a sex offender under the Adam Walsh Act.

23. By virtue of his convictions in New Jersey and Germany, the Adam Walsh Act required PENDLETON to register in any jurisdiction in which he resides, where he is an employee, and/or where he is a student, and not later than 3 business days after each change of name, residence, employment, or student status, he must appear in person in at least one jurisdiction involved and

9

inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. *See* 18 U.S.C. § 2250(a); 42 U.S.C. §§ 16911 & 16913.

## PENDLETON'S Travel in Interstate and Foreign Commerce and Failure to Register or Update His Registration

24. PENDLETON was deported from Germany, and re-entered the United States on January 21, 2008, arriving at John F. Kennedy Airport in the state of New York. During a secondary customs inspection, PENDLETON told an agent from the Bureau of Immigrations Customs Enforcement (ICE) that he would likely be residing a       W. 14th Street, Wilmington, Delaware.

31. Since his return from Germany, PENDLETON obtained a Delaware identification card, using the address 202 W. 14th Street, Wilmington, Delaware. Further, your affiant has learned during his investigation that PENDLETON continues to use his Wilmington, Delaware address for his Discover credit card, other major credit cards, his recent travel reservations to Europe, as well as items purchased online.

25 Your affiant has spoken with Deputy United States Marshal William David, who provided the following report: On or about February 4, 2008, DUSM David approached       W. 14th Street, Wilmington DE and made contact with an individual who informed DUSM David that she has resided at       W. 14th Street, Wilmington DE full time since August, 2002. The resident of that address further informed DUSM David that PENDLETON is a friend of her parents, and had arranged with her parents to use that address to receive mail. The resident stated that PENDLETON has never resided or stayed at that address while she

10

had been living there, and to her knowledge PENDLETON had not resided at that address prior to that time. The resident expressed her understanding that PENDLETON was currently residing in Philadelphia, and provided DUSM David with two phone numbers where PENDLETON could be reached,

and a cellular phone,                    . The number :               is a published number listed at the address           Chester Avenue, Philadelphia PA, 19143.

26. On or about March 4, 2008, the resident of      W. 14th Street, Wilmington DE called DUSM David and indicated that she had received a postcard from PENDLETON from San Francisco in which he asked to pick up his mail upon his return.

27. On March 4, 2008, PENDLETON applied for a new passport and in the passport application, PENDLETON stated that his permanent address is W. 14th Street, Wilmington, DE. In the application, PENDLETON provided a statement as to the circumstances of how he lost his passport and his reasons for applying for a new one. In the application, PENDLETON stated that he likely lost his passport when he was in Oakland, California on February 14, 2008, and that he was in San Jose, California on February 23, 2008. PENDLETON therefore admitted to being present in California for at least ten days, of which six were business days.

28. On March 7, 2008, the resident of      W. 14th Street told Deputy U.S. Marshal Bill David that PENDLETON had contacted her to pick up his mail. The resident later told DUSM David, that PENDLETON was coming at 4pm on

11

March 10, 2008.  The resident further stated that PENDLETON told her that after picking up his mail, he would be gone for a long time.

29.  At approximately 4 pm on March 10, 2008, DUSM David parked outside of        W. 14th Street, Wilmington, DE, and saw PENDLETON arrive at that location shortly thereafter.  DUSM David observed PENDLETON first check the mail box, and then appear to be waiting around outside the residence. DUSM David approached PENDLETON and identified myself as a Deputy United States Marshal.  PENDLETON produced his Delaware identification card.  PENDLETON told DUSM David that his address was        W. 14th Street, Wilmington DE, but that he had lost his key and was waiting for the other occupant to come home and let him in.  DUSM David asked for photo identification, at which time PENDLETON produced a U.S. Passport.  At that point, DUSM David asked PENDLETON if he had other documentation showing that        W. 14th Street is his address, at which point PENDLETON produced a card with the title "Hostelling International USA" which had his name and the W. 14th Street address.  DUSM David asked PENDLETON where he was coming from and PENDLETON stated that he had just returned from Chicago where he was visiting his son.  DUSM David specified where are you coming from today, and PENDLETON indicated that he had come down from Philadelphia and was waiting to get into        W. 14th Street, after which time he was going to return on the train to Philadelphia.  DUSM David asked where PENDLETON was staying in Philadelphia, and PENDLETON told DUSM David

12

that he was staying at a hostel because he had business in Philadelphia and it was more convenient to stay there.

30. A check with the Delaware State Police Sex Offender Registry indicated no records for Thomas PENDLETON registered as a sex offender. Moreover, there is no evidence that PENDLETON attempted to contact the Delaware State Police after his return to the United States in January, 2008. Your affiant also received written confirmation from the Pennsylvania State Police that there is no record of Thomas PENDLETON registered as a sex offender in the State of Pennsylvania, as of March 11, 2008. Your affiant further received written confirmation from the Sex Offender Tracking Program at the California Department of Justice, that there is no record that Thomas PENDLETON registered as a sex offender in the state of California as of March 12, 2008.

31. Your affiant is aware that Delaware does not require sex offenders to register if the conviction occurred before June 27, 1994, or by virtue of his foreign conviction. Your affiant is also aware, however, that PENDLETON would be required to register under Pennsylvania and California state law, as well as under the Adam Walsh Act. Moreover, when PENDLETON left Washington D.C. in May, 2005, he was required to give Washington D.C. an accurate address, and told Yolanda Stokes that he was moving to        W. 14th Street. Based on the above information, however, your affiant believes that PENDLETON does not actually reside at        W. 14th Street, Wilmington DE, but rather, he has been residing or traveling through California and Pennsylvania, each locations where

13

he would have been required to register. Given that PENDLETON continues to falsely assert that he resides in Delaware — the one state in which he alleges that he does not need to register — your affiant believes that he is knowingly using that address as a way to evade federal and state registration requirements.

32. Additionally, even if Delaware were considered to be PENDLETON's nominal residence for purposes of the Adam Walsh Act or SORNA, PENDLETON would have an obligation to contact Delaware authorities and inform them of his most recent German conviction upon his return to the United States. Based on his interaction with consular officials while imprisoned in Germany, and his email to Yolanda Stokes of CSOSA in 2005, PENDLETON displayed substantial knowledge regarding the impact of foreign convictions on his status in the United States, and moreover, PENDLETON was specifically advised in 2006 to contact the Attorney General in any state in which he planned to reside regarding the impact of his foreign conviction. Your affiant believes, therefore, that PENDLETON was on notice that he must update his registration with Delaware, and any other state in which he resided.

**PENDLETON'S USE OF THE TOMTOURSP@YAHOO.COM EMAIL ACCOUNT**

33. On March 31, 2008 this Court signed a search warrant for the contents of a TOMTOURSP@YAHOO.COM email account PENDLETON USED as a repository for travel documents, noted above in paragraph 10. Following the execution of this warrant, Yahoo! provided a return of information on April 11, 2008. Contained in that return were approximately 350 emails, both sent and

14

received by PENDLETON. Based on a review of these emails, the following

relevant facts were gathered:

A) Pendleton emailed three word processing documents that he called "Tom's Adventures in America" to several individuals in February 2008. Contained in these documents are diary-like descriptions of PENDLETON'S journey back to America from Germany and his travel within the United States following his return. Pendleton details his mode of travel, length of stay in various locations, individuals he encounters, and his plans for the future. More importantly, PENDLETON refers to other diary entries that precede the documents he was currently emailing. Specifically, PENDLETON references his case in Germany.

B) Several emails confirm that Pendleton purchased the seized laptop computer in January 2006 when he was in the Czech Republic, at least six months prior to his arrest in June 2006 in Germany; in those messages he describes how the computer was in his possession when he left the German prison and he transported it back to the United States in his checked luggage. Finally, PENDLETON referenced his purchase and possession of an "old" media storage device.

C) Several emails reference PENDLETON's extensive use of his laptop to access the Internet to research travel options, obtain travel documents, and store those documents. Further, several emails reference PENDLETON's use of the Internet to research Delaware Sex Offender Registration laws.

D) PENDLETON attached a digital photo of himself on a train heading to Chicago in or about February 2008. PENDLETON specifically describes his location and destination. Further, emails predating PENDLETON's June 2006 arrest in Germany contain additional digital photos (as attachments) of PENDLETON in a school classroom with children, as well as other photos representative of the individuals with whom he is spending time.

E) Several emails discuss PENDLETON's special trip planned with a German boy. This boy was the 15-year-old victim involved in PENDLETON's German conviction. The emails, some sent directly to the boy, discuss PENDLETON's fondness for the boy and his desire to go on an extended bike trip with him. Notably, it was during this bike trip that it was alleged that PENDLETON fondled this boy's genitals.

34. From your affiant's experience in this investigation, as well as other

investigations, I know that individuals commonly use their computers to connect

to the Internet, where the can exchange email correspondence, and conduct

online research about any subject of their choosing, and arrange and purchase travel tickets and documents. I know that individuals commonly will save their research results, trip confirmations, and relevant travel documents.

35. As is the case with most digital technology, when communications is saved or stored on the computer used for these purposes, it can be intentionally, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. However, I know also that digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer to peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

36. Additionally, I know that this laptop computer contained nearly 80 gigabytes of storage. This storage capacity is sufficient to maintain thousands of graphic and text files. Similarly, I know that individuals use "thumb" drives to transfer data between computers and that these devices are capable of storing hundreds to thousands of graphic or text files.

IV. CONCLUSION

16

37.  Because PENDLETON'S travel history, research into Delaware law, travel diary, communications and/or arrangements with potential victims, and photos documenting his travel, forms the basis for his failure to register and his travel to engage in illicit sexual acts offense, your affiant respectfully submits that there is probable cause to believe that the ASUS laptop computer and/or "thumb drive" in paragraph 2 and as described in ATTACHMENT A, which are currently held by the Wilmington, Delaware U.S. Marshal's office, contain evidence, fruits, and/or instrumentalities of crimes involving the failure to register as a sex offender and traveling in foreign commerce to engage in illicit sexual acts with minors in violation of 18 U.S.C. 2250 and 2423(c), respectively.

Special Agent William Shields
U.S. Department of Homeland Security
Bureau of Immigration and Customs
Enforcement

SUBSCRIBED TO AND SWORN BEFORE ME
THIS ____ DAY OF March 2008

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Items to be searched

1) An ASUS silver color laptop computer, with a touch pad mouse, windows XP sticker, and an AT Computers (Made in Czech Republic) sticker on the underside. Serial number obtained from ASUS is 2ANPO23986.

2) An A-DATA "JOGR" mobile media storage device with a USB port connector, a key chain attached, and orange and gray in color.

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

Based on the foregoing, I respectfully submit that there is probable cause to believe that the following items, which constitute evidence of violations of Title 18, United States Code, Sections 2250, 2423(c) and 2423(e), will be found in the items to be searched:

(a) electronic copies of photographs or other forms of graphic files that depict the PENDLETON and others in locations documenting PENDLETON's travel and individual with whom PENDLETON interacted with during 2006 and 2008, the relevant investigative timeframe.

(b) Any and all electronic correspondence including, but not limited to, electronic word documents, photographs, emails, drawings, sent or received by PENDLETON relating to his interactions with the German boy identified above or his travels following his return to the United States in January 2008 through California, Philadelphia, Pennsylvania, Washington, DC, Chicago, Illinois;

(d) Electronic address books, mailing lists, mailing address labels, and any and all documents and records pertaining to any correspondence between PENDLETON individuals in Germany relating to his interaction with minors, his German conviction for molesting a German boy, or his past or future travel plans;

(e) Address books, names, lists of names and addresses, and information about minors visually depicted in photographs, including the German boy described in this affidavit;

(f) Electronic records of bank statements, online merchandise order, utility bills, personal checks, or other online transactional records that identify PENDLETON as a resident of     W. 14th Street, Wilmington De, 19801;

(g) Electronic records of airline, train or bus reservations, travel documents including itineraries and/or airline tickets, passport information, credit card billing information, bank receipts, or other correspondences that indicate travel by PENDLETON between the United States and Germany, and within the United States following PENDLETON's return on or about January 21, 2008.

(h) Any and all evidence, to include index.dat data or other temporary Internet files,  of online research into travel destinations, pricing, ticketing, passports, or other travel requirements; and into Delaware or other state law on Sex Offender Registration;

(I) Any and all evidence relating to electronic word processing documents

detailing PENDLETON's traveling following his return to the United States and his interaction with the German boy described in this affidavit; and

(l)  Pictures of minors, including the German boy described in this affidavit.